# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * *
JOHN D. SLUSSER, JR.,              *
                                   *
                                   *    No. 21-1636V
              Petitioner,          *    Special Master Christian J. Moran
                                   *
v.                                 *    Filed:  June 26, 2026
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
              Respondent.          *
* * * * * * * * * * * * * * * * * * * * *
```

Robert George Rose, Bosson Legal Group, PC, Fairfax, VA for petitioner;
Traci R. Patton, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

Pending before the Court is petitioner John D. Slusser, Jr.'s motion for final attorneys' fees and costs. He is awarded **$58,626.85**.

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

## I.    <u>Procedural History</u>

### A.    **Before Petition Was Filed**

Mr. Slusser first communicated with the law firm that represented him in this case, the Bosson Legal Group, on April 13, 2021.[2]  Within the Bosson Legal Group, Mr. Slusser's primary attorney was Robert Rose, although, as discussed below, other attorneys assisted.

Over the next few months, paralegals gathered medical records.  Attorney Rose discussed Mr. Slusser's medical course with some of his providers.

### B.    **Entitlement Phase**

On behalf of Mr. Slusser, Attorney Rose drafted a petition, which was filed July 29, 2021.  The petition alleged that an influenza vaccine Mr. Slusser received on October 12, 2018, caused him to suffer from injuries including, but not limited to, sepsis, neuroborreliosis, encephalopathy, and autoimmune encephalitis.  When the petition was filed, the case was assigned to a different special master, but the case was assigned to the undersigned relatively soon.

The Secretary disputed the claim. Resp't's Rep't, filed Feb. 3, 2022. The Secretary pointed out that Mr. Slusser had not presented a report from an expert. The Secretary also commented that some of his treating doctors linked preceding viral infections to various health problems.  Thus, the Secretary recommended a denial of the claim for compensation.

In anticipation of the parties retaining experts, a set of instructions for experts were proposed.  After not receiving any objections, these instructions became final.

Starting around February 2022, Attorney Rose was assisted by another attorney in the Bosson Legal Group, Isaiah Kalinowski.  Attorney Kalinowski spent many hours writing a report for a neurologist, Zurab Nadareishvili, who eventually opined in favor of vaccine-causation.[3]  Most of Attorney Kalinowski's work in drafting the report took place in November and December 2022.  At the

---

[2] Information about the activities of attorneys and staff for Bosson Legal Group is found in their timesheet, which is Exhibit 62 at 1-22.

[3] Information about the activities of Dr. Nadareishvili is found in his invoices, filed as Exhibit 62 at 32 and 34.

same time, the Bosson Legal Group engaged an outside attorney, Amber Wilson, to add to the expert's report.[4]

Dr. Nadareishvili supported the claim that the flu vaccination harmed Mr. Slusser. His report asserts: "Mr. Slusser suffered from an acute episode of autoimmune encephalitis, that he experienced the onset of that condition almost immediately after vaccination, and that the vaccination at issue was a substantial factor in the causation of Mr. Slusser's injured condition." Exhibit 48 (filed Dec. 22, 2022) at 1.

The Secretary responded to Dr. Nadareishvili's report. The Secretary presented opinions from a neurologist, Thomas C. Bailey, and an immunologist, Claude Steriade. Exhibits A and C (both filed Feb. 23, 2023).

To support his client's claim and to respond to the opinions from Dr. Bailey and Dr. Steriade, Attorney Kalinowski worked on a responsive expert report. Most of this activity took place in May and June 2023. Dr. Nadareishvili's supplemental report was filed on June 15, 2023. Exhibit 50.

The Secretary responded. Exhibit E (Dr. Bailey's report, filed Aug. 28, 2023) and Exhibit F (Dr. Steriade's report, also filed Aug. 28, 2023). These submissions completed the disclosure of expert opinions. Pet'r's Status Rep., filed Sep. 6, 2023.

In December 2023, Attorney Rose and Attorney Kalinowski assessed the value of Mr. Slusser's case to prepare a demand. Although a demand was presented, the Secretary apparently declined to pursue settlement. Time entry for Feb. 28, 2024.

The parties were directed to argue their positions through briefs. Order, issued Feb. 22, 2024. This order also suggested that the parties may wish to pursue settlement. In an ensuing status conference, the Secretary suggested that a dispute over diagnosis was an obstacle to settlement. Thus, the parties requested a suspension of the briefing schedule until a tentative finding was issued.

A tentative ruling stated that "Dr. Nadareishvili provided little, if any, basis for finding that the encephalitis is autoimmune in origin. For example, Dr. Nadareishvili did not identify the diagnostic criteria for autoimmune encephalitis

---

[4] Information about Attorney Wilson's activities is found in her invoice, which was filed as Exhibit 62 at 51-52.

in his first report." Tentative Finding, issued Aug. 28, 2024. Although Dr. Nadareishvili's second report did address diagnostic criteria, his opinion that Mr. Slusser suffered from autoimmune encephalitis remained unpersuasive. Because Mr. Slusser was not likely to establish the diagnosis, he was advised that continuing the case may lack a reasonable basis.

In the ensuing status conference, Attorney Rose proposed that Mr. Slusser would like to go forward with the case by filing briefs, despite the warning that he may not be paid. Alternatively, Attorney Rose proposed that a settlement in a low amount might be appropriate. The parties were given an opportunity to explore settlement. Order, issued Sep. 17, 2024.

The parties tentatively agreed to resolve the case. See Order, issued Oct. 10, 2024. On January 27, 2025, the parties filed a joint stipulation in which the undersigned adopted as his decision on that same day. Mr. Slusser received $7,000.00. 2025 WL 551670.

### C.    Attorneys' Fees and Costs

Mr. Slusser requests attorneys' fees of $79,913.10 and attorneys' costs of $17,012.75, for a total request of $96,925.85. Fees App. at 1-2, filed Apr. 2, 2025. However, the way Mr. Slusser has categorized items is somewhat unusual in that Mr. Slusser categorizes the work of Attorney Wilson as a "cost" rather than an "attorneys' fees." If Attorney Wilson's work were treated as a fee, then the $96,925.85 breaks down into $90,545.90 in attorneys' fees and $6,379.95 in costs. Mr. Slusser warrants that he personally did not incur any costs related to the prosecution of this case. Exhibit 63 at 1.

On the day that Mr. Slusser submitted his pending motion, the Secretary responded with his boilerplate response. The Secretary argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Response, filed Apr. 2, 2025, at 1. The Secretary adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id. at 2. Additionally, he recommends "that the Court exercise its discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 4. Mr. Slusser filed a reply on April 3, 2025.

4

## II.    Reasonable Amount of Attorneys' Fees and Costs

Because Mr. Slusser received compensation, he is entitled to an award of reasonable attorneys' fees and costs.  42 U.S.C. § 300aa–15(e).  Thus, the question at bar is whether the requested amount is reasonable.

The Vaccine Act permits an award of reasonable attorney's fees and costs. §15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.  Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

### A.    Reasonable Attorneys' Fees

#### 1.    Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349 (citing Davis Cty.  Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl.  Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).  However, in this case, all the attorneys' work was done primarily in-forum.

Mr. Slusser requests the following hourly rates for the work of his counsel: for Attorney Rose, $405.00 per hour for work performed in 2021, $415.00 per hour for work performed in 2022, $425.00 per hour for work performed in 2023, $440.00 per hour for work performed in 2024, and $462.00 per hour for work performed in 2025; for Attorney Kalinowski, $430.00 per hour for work performed in 2022; $445.00 per hour for work performed in 2023, $480.00 per hour for work

performed in 2024, and $504.00 per hour for work performed in 2025; and for Mr. Timothy Bosson, $425.00 per hour for work performed in 2021. Some of these rates require adjustment. Mr. Slusser also requests between $115.00-$195.00 per hour for paralegal work performed from 2021-2025. The hourly rates requested by Isaiah Kalinowski, Timothy Bosson, and their supporting paralegals for all time billed through the end of 2025 are reasonable and consistent with prior determinations.  See Greene v. Sec'y of Health & Human Servs., No. 21-1891V, 2025 WL 2803408 (Fed. Cl. Spec. Mstr. Aug. 27, 2025); see also Beyerl v. Sec'y of Health & Human Servs., No. 20-32V, 2021 WL 4205303 (Fed. Cl. Spec. Mstr. Aug. 18, 2025).  However, the 2021 hourly rate requested by Robert Rose requires adjustment.

Attorney Rose was previously awarded the *lesser* rate of $360.00 for work performed in 2021. See Greene, 2025 WL 2803408, at *2, Beyerl, 2021 WL 4205303, at *2-3. The undersigned finds no reason to deviate from that reasoned determination and it otherwise is not the practice of OSM to adjust prior rate determinations upward in later cases. See Jefferson v. Sec'y of Health & Human Servs., No. 19-1882V, 2023 WL 387051 (Fed. Cl. Spec. Mstr. Jan. 9, 2023). Accordingly, the undersigned reduces Attorney Rose's rate for work performed in 2021, to be consistent with Greene and Beyerl. This results in a reduction of **$1,314.00**.[5]

Mr. Slusser's counsel also engaged Attorney Amber Wilson, PhD, as secondary counsel in this case because of her "significant background in scientific topics." Exhibit 65 at 5. Attorney Wilson billed $427.00 per hour for 23.2 hours of work performed in 2022 ($9,906.40), and $454.00 per hour for 1.6 hours of work performed in 2023 ($726.40), for a total request of $10,632.80.  The rates requested for Attorney Wilson are consistent with prior determinations.  See Delaney v. Sec'y of Health & Human Servs., No. 21-1620V, 2025 WL 900756, at *3 (Fed. Cl. Feb. 18, 2025); Munoz v. Sec'y of Health & Human Servs., No. 21-1369V, 2024 WL 2730966, at *3 (Fed. Cl. Spec. Mstr. May 1, 2024).

As discussed below, the hourly rates charged by Attorneys Kalinowski and Wilson are excessive when they were writing reports for Dr. Nadareishvili.

---

[5] This amount is calculated as: ($405 - $360) x 29.2 hrs. = $1,314.00.

2.    Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable. However, the undersigned has reviewed the submitted billing records, and finds they require an overall reduction.

a)    *Block Billing*

As a preliminary matter, Attorney Rose created a number of entries that constitute block billing.  Block-billing, or billing large amounts of time without sufficient detail as to which tasks were performed and their duration, is disfavored. See Broekelschen v. Sec'y of Health & Human Servs., 2008 WL 5456319, at *4-5 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees for block-billing), mot. for rev. denied, 102 Fed. Cl. 719 (2011); see also Jeffries v. Sec'y of Health & Human Servs., 2006 WL 3903710, at *9 (Fed Cl. Spec. Mstr. Dec. 15, 2006). Indeed, the Vaccine Program's Guidelines for Practice state, "Each task should have its own line entry indicating the amount of time spent on that task. Several tasks lumped together with one time entry frustrates the court's ability to assess the reasonableness of the request."[6]  A warning about block-billing was part of the February 8, 2022 order regarding attorneys' fees.

Here, a problem in reviewing some of the billing entries is that the time entries have blended some compensable activities and some non-compensable activities. For example, on August 5, 2021, Attorney Rose billed 1.9 hours to "Review and reply to emails from Mr. Slusser regarding the executed Affidavit and PAR Questionnaire; Draft Notice of Filing PAR Questionnaire; Finalize and file Notice of Filing Exhibits, Exhibit List, Exhibits 1-15, and Notice of Completion; Meet with paralegal to finalize labeling and sizing of Exhibits; Draft email to Mr. Slusser to provide all documents filed to date and status update." On March 8, 2022, Attorney Rose billed 1.9 hours to "Telephone call with Mr. Slusser to obtain information for Damages Affidavit; Telephone call with Mrs. Slusser regarding same; Create initial draft of Damages Affidavit; Draft email to Mr. and Mrs. Slusser regarding same." Id. at 6. There are more than 20 block-billed entries.   The

---

[6] The Guidelines for Practice can be found at the link below. Please refer to page 76: https://www.uscfc.uscourts.gov/guidelines-practice-under-national-vaccine-injury-compensation-program

problem is that one activity, such as providing documents to a client, is a clerical activity that should not be charged at all.

Although no specific deduction is made for block-billing, the block-billing affects the estimated deductions for clerical, paralegal, and excessive activities discussed in the following sections.

### b)     Administrative / Clerical Work

Mr. Slusser's counsel billed for some administrative or clerical tasks. It is well-established in the Vaccine Program that billing for some administrative tasks (e.g., filing), even at a paralegal rate, is not permitted. See, e.g., Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature ... should be considered as normal overhead office costs included within the attorneys' fee rates"). Attorneys may not charge for clerical tasks because the attorney's hourly rate reflects overhead expenses, such as employing a secretary.  Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989); Bennett v. Dep't of Navy, 699 F.2d 1140, 1145 n.5 (Fed. Cir. 1983); Guy v. Sec'y of Health & Human Servs., 38 Fed. Cl. 403, 407-08 (1997).

In this case, more than a dozen of the entries billed by Attorney Rose and his staff were for clerical activities. Examples include organizing medical records, compiling, labeling, and filing medical records, preparing exhibits, preparing evidence for filing, filing medical records, and drafting and filing basic documents like a Notice of Filing, Certificate of Service, Exhibit List, or Statement of Completion. However, these activities do not require any special training, and are thus considered clerical tasks. To be clear, there is no prohibition against performing clerical tasks; some clerical tasks, such as filing documents, are essential.  But, the employment of the person who can perform clerical tasks is built into the attorneys' high hourly rate as part of overhead.  See Pickens v. Sec'y of Health & Human Servs., No. 17-187V, 2020 WL 414442 at *4 (Fed. Cl. Jan. 9, 2020) (denying motion for review of a decision reducing attorneys' fees and stating "legal training is not required to notify the Court that a document is being filed").

Deducting charges for clerical activities results in an elimination of $4,000.00.

### c)     Paralegal

When an attorney does the work of a paralegal or administrative assistant, he or she should be paid a rate commensurate with the nature of the work.  See Valdes

v. Sec'y of Health & Human Servs., 89 Fed. Cl. 415, 425 (2009) (noting that "the Special Master exercised appropriate discretion in denying requested costs for work performed by Petitioner's counsel's associate" when the special master determined "that the associate's time spent obtaining medical records was more consistent with paralegal duties."). The dichotomy between paralegal activities (billable) and clerical activities (non-billable) is often announced. However, a general principle to differentiate them is somewhat elusive. To qualify as a paralegal, a person needs special training and experience. See Impresa Construzioni Geom. Demenico Garufi v. United States, 100 Fed. Cl. 750, 768 (2011); see also Pressly v. United States, No. 18-1964, 2025 WL 1780947, at *12 (Fed. Cl. May 12, 2025). Thus, one way to categorize whether activities can be billed is to ask whether the activity required special skills.

Here, examples of work that Attorney Rose did and charged his usual (attorney) hourly rate include seeking medical records and summarizing medical records. These tasks can be delegated to staff members. Because the value of Attorney Rose's work for paralegal tasks was approximately $5,000.00 and because Attorney Rose has charged approximately twice as much per hour as paralegals, the reduction for paralegal work is $2,500.00.

### d)    Excessive Time

"Counsel should not include in their fee requests hours that are 'excessive, redundant, or otherwise unnecessary.'" Saxton, 3 F.3d at 1521 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). One way that activities can be excessive is when multiple attorneys work on the same case. Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (2009); Raymo v. Sec'y of Health & Human Servs., 129 Fed. Cl. 691, 703-704 (2016); Rice v. Sec'y of Health & Human Servs., No. 15-1335V, 2018 WL 4784563, at *2 (Fed. Cl. Spec. Mstr. Aug. 27, 2018); Davis v. Sec'y of Health & Human Servs., No. 15-159V, 2017 WL 877277, at *6 (Fed. Cl. Spec. Mstr. Feb. 7, 2017) (finding the billing pattern for intraoffice meetings and emails "disturbing" and reducing the attorneys' fees by twenty percent).

Here, the invoices also reveal excessive time spent on interoffice communications, including e-mails and interoffice discussions between counsel, and with the paralegal. One dimension of this problem was that Attorney Rose was counsel of record yet often required assistance from other attorneys inside and outside the Bosson Legal Group. See, e.g. entries for July 19, 2021; July 21, 2021; November 16, 2022; June 15, 2023; October 6, 2023. Attorney Rose is being

9

compensated at more than $400.00 per hour because Attorney Rose is an experienced attorney.  As an experienced attorney, Attorney Rose should be able to represent Mr. Slusser in a relatively straightforward causation-in-fact case without excessive counsel from other attorneys.  On the other hand, if Attorney Rose's level of experience is such that assistance from more senior attorneys is required, then Attorney Rose should be compensated at a lower hourly rate to account for the involvement of more attorneys.  See Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 733 (2011) (noting that an experienced attorney who charges a relatively high hourly rate may be expected to perform some tasks in less time than inexperienced attorneys with lower hourly rates).

Likewise, some of Attorney Kalinowski's entries show an oversight of Attorney Rose.  Sometimes, Attorney Kalinowski and Attorney Rose billed for the same activity.  E.g. Entry for Oct. 6, 2023.  In the Vaccine Program, the more common practice is for the senior (and highest charging) attorney to invoice for such meetings, and the junior attorney does not charge.

The duplication of attorneys contributes to some activities being charged excessively.  For example, in early April 2023, Attorney Rose and Attorney Kalinowski charged almost one hour of attorney time for the process surrounding a routine motion for enlargement of time.

To account for the excessive charges, $4,000.00 will be deducted.

### e)      Attorneys Drafting an Expert's Reports

Finally, the most significant issue is the disproportionate amount of time the attorneys spent drafting the reports that Dr. Nadareishvili eventually signed. Attorneys drafting an expert's report is disfavored. While courts have recognized that an attorney may assist experts in preparing reports, that does not give attorneys carte blanche authority to write expert reports, and their assistance cannot reach the point where it directs or determines the outcome of the expert's opinion. See Gruber v. Sec'y of Health & Human Servs., 91 Fed. Cl. 773, 795 (2010); see also, Pisani v. Sec'y of Health & Human Servs., No. 20-1249V, 2025 WL 4711747, at *11-12 (Fed. Cl. Spec. Mstr. May 7, 2026). Pisani found that petitioner's counsel, although a competent attorney, lacked the medical qualifications of the expert.  See Pisani (distinguishing Gruber). The undersigned noted that opinions from outside of the Vaccine Program have frowned upon an attorney's drafting an expert's report. Id., citing Gerke v. Travelers Ins. Co., 289 F.R.D. 316, 326, 328 (D. Or. 2013) (a district court ordered production of draft reports because "there was a question whether Plaintiff's counsel's involvement in the creation of Painter's

10

expert report exceeded Rule 26's limits." The court found that "an expert report 'ghost-written' from 'whole cloth' violates the spirit, if not the letter of [Rule 26 of the Federal Rules of Civil Procedure]."); Numatics, Inc. v. Balluff, Inc., 66 F.Supp.3d 934, 945 (D. Mi. 2014) (Based upon the expert's deposition testimony, the Court found that he was "nothing more than a 'highly qualified puppet' and the opinions in his report do not reflect his own reasoned views of the case.").

Attorneys Kalinowski and Wilson primarily drafted the expert reports that Dr. Nadareishvili eventually signed. Initially, Attorney Rose and Attorney Kalinowski planned the contents of Dr. Nadareishvili's report. They also communicated with Dr. Nadareishvili. However, these preliminary efforts in February and March 2022 total less than five hours.

In May 2022, Attorney Rose started researching topics to include in the expert's report. In June 2022, Attorney Kalinowski began drafting the report. To be sure, Attorney Kalinowski sometimes mentions that his writing is at the instruction of Dr. Nadareishvili. See, e.g., time entry for July 20, 2022. However, it is difficult to see what instructions Dr. Nadareishvili provided as his invoice for his first report does not describe any conversations with counsel. In any event, attorneys from the Bosson Legal Group (primarily Attorney Kalinowski) spent more than 50 hours of time with a value of more than $20,000.00 preparing a report for Dr. Nadareishvili's signature.[7]

The attorneys from the Bosson Legal Group were not the only attorneys writing Dr. Nadareishvili's report. Attorneys Rose and Kalinowski also retained the services of Attorney Wilson. Attorney Wilson spent an additional 23.2 hours, worth approximately $10,000.00 for Dr. Nadareishvili's first report.

By way of contrast, according to his December 20, 2022 invoice, Dr. Nadareishvili spent a total of 2.5 hours preparing and reviewing the report, which was eventually filed as Exhibit 48. Exhibit 62 at 32. In other words, of the total time spent on Exhibit 48, Dr. Nadareishvili spent less than four percent. This pie chart depicts the relative portions:

---

[7] As emphasized, attorneys writing reports for experts to sign is a bad practice. But, even if that approach were reasonable, many of Attorney Kalinowski's time entries are vague. See, e.g., time entry for Dec. 8, 2022 (9.7 hours billed for "Review literature filed in another autoimmune encephalitis case for relevant articles to use in this case. Integrate references to those articles into draft expert report"). Accordingly, Attorney Kalinowski is, again, advised to create time entries that are more specific. See Attorneys' Fees Order, issued Feb. 8, 2022.



Contributions for Exhibit 48

Bosson Legal Group  ■  Amber Wilson  ■  Dr. Nadareishvili

The process for Dr. Nadareishvili's second report, which was filed as Exhibit 50, follows a relatively similar pattern, although Attorney Wilson contributed only 1.6 hours.  Here, Attorney Kalinowski spent approximately 20 hours, worth about $9,000.00, writing the second expert report.

According to Dr. Nadareishvili's June 14, 2023 invoice, he spent 6.0 hours reviewing medical records, conferring with Attorney Kalinowski, and reviewing the reply report. Exhibit 62 at 34.  Thus, Dr. Nadareishvili's contributions were approximately 20 percent.



Contributions to Exhibit 50

Bosson Legal Group  ■  Amber Wilson  ■  Dr. Nadareishvili

This disparity is concerning. It is unclear how much of the report is Dr. Nadareishvili's own work. The disproportionate number of hours spent by

Attorney Kalinowski on the report tends to suggest that it is predominantly Attorney Kalinowski's work.  This is problematic.  <u>See</u> <u>Hoffman v. Sec'y of Health & Human Servs.</u>, No. 19-111V, 2024 WL 4442045, at *3 (Fed. Cl. Spec. Mstr. Sept. 16, 2024) (noting the disparity between the more than 32 hours Attorney Kalinowski spent, and the 2 hours Dr. Nadareishvili spent drafting the expert report was "highly unusual in the Vaccine Program.").

The present case is the second instance in which Attorney Kalinowski has essentially written Dr. Nadareishvili's reports.  Admittedly, Attorney Kalinowski's efforts here took place before a concern was raised in <u>Hoffman</u>.  Nevertheless, to the extent that two examples are the beginnings of a pattern, the undersigned is losing confidence in Dr. Nadareishvili's independence.  If Dr. Nadareishvili wishes to continue to assist petitioners in the Vaccine Program, it is to the advantage of both Dr. Nadareishvili and the petitioners in those future cases that Dr. Nadareishvili (and not attorneys) draft his reports.

These concerns about Dr. Nadareishvili's credibility can be reserved for future cases.  The immediate issue is attempting to determine what is a reasonable amount of attorneys' fees.  In this context, "attorneys' fees" includes the work of Attorney Wilson, which had been invoiced as an "attorneys' cost."

To restate, the components of a reasonable attorney fee include a reasonable hourly rate and a reasonable number of hours.  As to hourly rate, the attorneys generally have charged approximately $425.00 per hour, depending upon who was doing the work and when the work was done.  However, this rate is not reasonable for drafting the report for a doctor.  Fundamentally, the attorneys are venturing beyond the legal field into the medical field.  The rates that Attorneys Rose, Kalinowski, and Wilson can charge reflect their legal training and experience as lawyers, not work as doctors.  In addition, as explained in the August 28, 2024 Tentative Finding, the two reports that Attorneys Kalinowski and Wilson largely wrote and that Dr. Nadareishvili signed were not persuasive.  A key aspect to Mr. Slusser's claim was that he suffered encephalitis that was autoimmune in origin.  However, the first report largely omitted any discussion about an autoimmune diagnosis and the second report was only slightly better but far from persuasive.  Accordingly, it cannot be said that Attorneys Rose, Kalinowski, and Wilson even produced a good report.  Thus, their hourly rates must be reduced for poor performance.

As to the reasonable number of hours, the amount of time spent on the two reports (especially the first report) was excessive.  Professionals spent more than 70 hours preparing the first report, which was approximately 42 double-spaced

pages.  Roughly half of the report consists of a summary of medical records.  Another significant portion of the expert reports consists of quotations from and summaries of medical articles.  These quotations and summaries are not necessarily inappropriate, but they do not reflect much original thought from Attorneys Kalinowski and Wilson.  In the undersigned's experience, more than 70 hours is an unusually large number of hours to spend on one expert report.  See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (allowing special masters to rely upon their experience in adjudicating fee applications); Ennis v. Sec'y of Health & Hum. Servs., No. 16-1148V, 2026 WL 1266185, at *7-9 (Fed. Cl. Spec. Mstr. Apr. 13, 2026) (finding 68 hours for an expert's report to be excessive), mot. for rev. denied in relevant part (June 16, 2026) (bench ruling).

The concerns about the number of hours spent on the second report remain, although they are not as great.  In Exhibit 50, Attorney Kalinowski and Dr. Nadareishvili responded to reports from Dr. Bailey and Dr. Steriade.  The report is 17 double-spaced pages.  Collectively, the professionals spent more than 28 hours.  Again, the amount of time is more than typically found and, therefore, unreasonable.

In short, for both reports, the time spent was excessive and the quality was lacking.  In this situation, Mr. Slusser's attorneys will be awarded one-third the amount charged for the first report and Mr. Slusser's attorneys will be awarded one-half the amount charged for the second report.  Accordingly, this results in a deduction of $14,800 for attorneys at the Bosson Legal Group and a reduction of $6,600 for Attorney Wilson for the first report.  For the second report, the reductions are $4,600.00 for attorneys at the Bosson Legal Group and $360.00 for Attorney Wilson.

It bears repeating that the amount awarded for the two reports Dr. Nadareishvili signed is the amount that is reasonable, given the product produced.  No additional penalty is imposed for the attorneys' prominence in writing the reports.  However, attorneys are advised that in the future, more significant reductions may be imposed so as to disincentivize attorneys from writing reports for experts.

### 3.    Summary Regarding Attorneys' Fees

The section regarding reasonable number of hours discusses four topics (a) block billing, (b) administrative and clerical work, (c) paralegal work, and (d)

14

excessive charges.[8]  Special masters have noted these particular issues concerning Attorney Rose's and/or his firm's billing practices. See, e.g., Greene, 2023 WL 5666162, at *2-3 (reduced counsel's overall fee award by five percent due to block-billing and administrative work); Beyerl v. Sec'y of Health & Human Servs., No. 20-32V, 2021 WL 4205303, at *3-5 (Fed. Cl. Spec. Mstr. Aug. 18, 2021), (reduced counsel's overall fee award by five percent due to block-billing, administrative work, non-compensable billing, and excessive billing).  Counsel should endeavor to reform the billing practices.

A summary regarding fees for the Bosson Legal Group is:

| Bosson Legal Group | |
|---|---:|
| Amount Requested | $79,913.10 |
| Reduction for Attorney Rose's 2021 Hourly Rate | $1,314.00 |
| Reduction for Clerical Activities | $4,000.00 |
| Reduction for Paralegal Activities | $2,500.00 |
| Reduction for Interoffice Communications | $4,000.00 |
| Reduction for Attorney Drafting First Expert Report | $14,800.00 |
| Reduction for Attorney Drafting Second Expert Report | $4,600.00 |
| TOTAL | $48,699.10 |

A summary regarding fees for Wilson Science Law is:

| Wilson Science Law | |
|---|---:|
| Amount Requested | $10,632.80 |
| Reduction for Attorney Drafting First Expert Report | $6,600.00 |
| Reduction for Attorney Drafting Second Expert Report | $360.00 |
| TOTAL | $3,672.80 |

Mr. Slusser is therefore awarded final attorneys' fees of **$52,371.90**.

## B.    Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed.

---

[8] A fifth topic is attorneys drafting an expert's reports.

Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Mr. Slusser requests a total of $17,012.75 in attorneys' costs. This amount is comprised of acquiring medical records, the Court's filing fee, postage, and expert services provided by Dr. Nadareishvili. See Exhibit 62 at 20-21. Again, although Mr. Slusser has categorized Attorney Wilson's work as a cost, the reasonableness of Attorney Wilson's work was addressed in the previous section regarding attorneys' fees.

For Dr. Nadareishvili, Mr. Slusser requests a rate of $450.00 per hour for 2.5 hours of work performed in 2022 ($1,125.00), and $495.00 per hour for 6 hours of work performed in 2023 ($2,970.00), for a total request of $4,095.00. This requires a minor adjustment. Dr. Nadareishvili has previously been awarded a rate of $400.00 per hour for work performed between 2019 and 2022. Walker v. Sec'y of Health & Human Servs., No. 21-278V, 2026 WL 686935, at *4-5 (Fed. Cl. Spec. Mstr. Feb. 12, 2026); Hoffman, 2024 WL 4442045, at *4; Godfrey v. Sec'y of Health & Human Servs., No. 17-1419V, 2023 WL 5666162, at *7 (Fed. Cl. Spec. Mstr. Aug. 15, 2023). The undersigned finds no reason to deviate from prior reasoned determinations regarding Dr. Nadareishvili's 2022 rate, and hereby reduces the rate requested herein to be consistent with the aforementioned decisions. This results in a reduction of **$125.00**.[9]

The remaining costs are typical of Vaccine Program litigation and have all been supported by the necessary documentation and are reasonable in the undersigned's experience.

A summary of the Bosson Legal Group's costs is

| Costs for Bosson Legal Group | |
| --- | --- |
| Amount Requested | $17,012.75 |
| Recategorization of Attorney Wilson's Work | $10,632.80 |
| Subtotal: Costs Excluding Attorney Wilson's Work | $6,379.95 |
| Reduction for Dr. Nadareishvili's Hourly Rate | $125.00 |
| TOTAL | $6,254.95 |

Accordingly, Mr. Slusser is awarded final attorneys' costs in the amount of **$6,254.95**.

---

[9] This amount is calculated as: ($450 - $400) x 2.5 hrs. = $125.00.

16

## III.    **Conclusion**

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, the undersigned awards attorneys' fees and costs as follows: a lump sum of **$58,626.85** (representing $52,371.90 in attorneys' fees and $6,254.95 in attorneys' cost incurred costs) to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[10]

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master

---

[10] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.